IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII PACIFIC HEALTH; KAPIOLANI MEDICAL CENTER FOR WOMEN AND CHILDREN; KAUAI MEDICAL CLINIC; STRAUB CLINIC & HOSPITAL; WILCOX MEMORIAL HOSPITAL; HILTON HAWAIIAN VILLAGE LLC; HILTON WORLDWIDE, INC. dba HILTON WAIKOLOA VILLAGE; KYO-YA HOTELS & RESORTS, LP dba MOANA HOTEL; KYO-YA HOTELS & RESORTS, LP dba PRINCESS KAIULANI HOTEL; KYO-YA HOTELS & RESORTS, LP dba SHERATON MAUI RESORT & SPA; KYO-YA HOTELS & RESORTS, LP dba SHERATON WAIKIKI RESORT; KYO-YA-HOTELS & RESORTS, LP dba ROYAL HAWAIIAN HOTEL; MARRIOTT HOTEL SERVICES, INC. dba WAIKIKI BEACH MARRIOTT RESORT & SPA; MARRIOTT HOTEL SERVICES, INC. dba WAIKOLOA BEACH MARRIOTT RESORT; QSI, INC. dba TIMES SUPER MARKET; STARWOOD HOTELS & RESORTS WORLDWIDE dba THE WESTIN MAUI RESORT & SPA; KAUAI BLUE INC., dba SHERATON KAUAI; HILTON HOTELS CORPORATION; SAFEWAY INC.; THE RITZ-CARLTON HOTEL COMPANY, L.L.C. dba THE RITZ-CARLTON, KAPALUA; WALDORF-ASTORIA MANAGEMENT LLC dba GRAND WAILEA RESORT,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DWIGHT TAKAMINE, DIRECTOR OF THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,<br><br>        Defendant. | CIVIL NO. 11-00706 SOM/KSC<br><br>ORDER PARTIALLY GRANTING PLAINTIFFS' COUNTER MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**ORDER PARTIALLY GRANTING PLAINTIFFS' COUNTER MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION.**

Before the court are motions going to the validity of a recently enacted state law governing employers' reactions to the taking of sick leave by employers.  The provisions in issue apply only to employers with more than 100 employees and with collective bargaining agreements.  This court concludes that the law is subject to Machinists preemption and violates the Equal Protection Clause.

**II.    BACKGROUND FACTS.**

Plaintiffs are Hawaii employers, each with more than 100 employees and each with at least one collective bargaining agreement with a union.

In 2011, the State of Hawaii enacted the law at issue in this case.  See ECF No. 33-2.  That law has been codified as section 378-32(b) of Hawaii Revised Statutes:

> (b) It shall be unlawful for an employer or a labor organization to bar or discharge from employment, withhold pay from, or demote an employee because the employee uses accrued and available sick leave; provided that:
>
> (1) After an employee uses three or more consecutive days of sick leave, an employer or labor organization may require the employee to provide written verification from a physician indicating that the employee was ill when the sick leave was used;
>
> (2) This subsection shall apply only to employers who:

2

>    (A) Have a collective
> bargaining agreement with their
> employees; and
>
>    (B) Employ one hundred or more
> employees; and
>
>    (3) Nothing in this subsection shall be
> construed to supersede any provision of any
> collective bargaining agreement or employment
> benefits program or plan that provides
> greater employee benefits or rights.

Haw. Rev. Stat. § 378-32(b).[1]

Plaintiffs challenge the validity of this law. Defendant Dwight Takamine, Director of the Department of Labor and Industrial Relations (the "State"), defends its validity.

At the hearing on the present motions, the court sought to get an understanding of how expansive the State's reading of the law was. In that connection, the court asked the State whether it read the law as prohibiting an employer covered by the law from disciplining an employee for dishonesty if that employee had called in sick but was seen by the employer on television as part of the crowd attending a football game, or observed in person at Ala Moana Shopping Center carrying bags of purchases on Black Friday. In asking this question, the court was aware that at least some Plaintiffs were parties to collective bargaining

---

[1] Plaintiffs do not challenge the portion of the statute stating that it applies only to employers with a hundred or more employees. Hawaii's legislature chose not to restrict smaller employers with or without collective bargaining agreements.

agreements permitting discipline for dishonesty.  See, e.g., ECF No. 38-8, PageID #480 (CBA for Hilton Hawaiian Village Beach Resort & Spa); ECF No. 38-12, PageID #506 (CBA for Kyo-Ya Hotels & Resorts, LP); ECF No. 38-16, PageID # 557 (CBA for Waikoloa Beach Marriot Resort); ECF No. 38-19, PageID # 582 (CBA for QSI, Inc.); ECF No. 38-20, PageID # 589 (CBA for QSI, Inc.); ECF No. 38-22, PageID# 600 (CBA for Safeway).  Other collective bargaining agreements may address discipline for "just cause," "just and sufficient cause," or "willful failure to perform work as required."  The State responded that it presently had no official position as to whether section 378-32(b) prohibited an employer from ever disciplining a unionized employee for lying about being sick.

In the counter motions for summary judgment before this court, Plaintiffs seek a determination that section 378-32(b) is preempted and violates the Equal Protection Clause, as well as a permanent injunction against the application of section 378-32(b), while the State seeks a determination that section 378-32(b) is a valid enactment.

The court determines that section 378-32(b) is preempted by the National Labor Relations Act ("NLRA") and violates Plaintiffs' equal protection rights.  The court, however, sets a hearing as to the appropriate remedy.

**III.     STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

Both sides in this case agree that there are no triable issues. They disagree only as to how the law applies to the issue of whether section 378-32(b) is valid.

**IV.    ANALYSIS.**

    **A.    Machinists Preemption.**

Plaintiffs argue that section 378-32(b) is preempted by the NLRA, 29 U.S.C. §§ 157-58. This court agrees.

Although the NLRA contains no express preemption provision, the Supreme Court has recognized two types of preemption under the NLRA. See Chamber of Commerce of the U.S. v. Brown, 554 U.S. 60, 65 (2008). The first, known as "Garmon preemption," was initially articulated in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). It precludes state interference with the National Labor Relations Board's interpretation and active enforcement of the NLRA's integrated scheme of regulation. Brown, 554 U.S. at 65. Garmon preemption forbids states from regulating activities that the NLRA protects or prohibits, or arguably protects or prohibits. Id. Garmon preemption is not at issue here.

Instead, this case involves "Machinists preemption." Named after Machinists v. Wisconsin Employment Relations

6

Commission, 427 U.S. 132 (1976), this type of preemption forbids both the National Labor Relations Board and states from regulating conduct that Congress intended be unregulated and left to the control of economic forces.  See Brown, 554 U.S. at 65.

The Machinists case arose out of a labor dispute in which the employer had attempted to raise the basic work day from 7½ hours to 8 hours and the basic work week from 37½ hours to 40 hours.  Union members refused to work more than 7½ hours per day or 37½ hours per week, as such work was seen as overtime. Machinists, 427 U.S. at 134-35.  The Wisconsin Employment Relations Commission determined that the union's peaceful refusal to work overtime was an unfair labor practice and issued a cease and desist order.  Id. at 136.  Wisconsin's circuit and supreme courts upheld that determination.  Id.  The United States Supreme Court reversed.  Noting that Congress intended that some conduct be unregulated and left to the free play of economic forces, the Supreme Court held that states may not prohibit the use of "economic weapons" by employees, unions, or employers.  Id. at 144, 147.  The Supreme Court ruled that the cease and desist order was an improper encroachment into substantive aspects of the bargaining process.  Id. at 149.

In Metropolitan Life Insurance Company v. Massachusetts Travelers Insurance Company, 471 U.S. 724 (1985), the Supreme Court made clear that the NLRA does not preempt all state

7

regulation affecting the terms of a labor agreement. That case examined a Massachusetts statute that specified minimum mental-health-care benefits. Id. at 727. The Supreme Court held that the health-care requirements were not preempted, noting that states have traditionally had great latitude under their police powers to pass laws protecting workers in employment relationships. For example, states may enact laws regulating child labor, a minimum wage, and occupational safety and health. Id. at 758. Not all local regulation touching and concerning the employment relationship between employees, unions, and employers is preempted. Id. at 757. Regulations involving minimum state labor standards are not preempted; such standards "affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Id. at 755. The Supreme Court viewed minimum state labor standards, such as the mental-health-care benefits in issue in the case before it, as having only "the most indirect effect on the right of self-organization established in the Act." Id. The Court said:

> Unlike the NLRA, mandated-benefit laws are
> not laws designed to encourage or discourage
> employees in the promotion of their interests
> collectively; rather, they are in part
> designed to give specific minimum protections
> to individual workers and to ensure that each
> employee covered by the Act would receive the
> mandated health insurance coverage. Nor do
> these laws even inadvertently affect these
> interests implicated in the NLRA. Rather,

> they are minimum standards independent of the
> collective-bargaining process that devolve on
> employees as individual workers, not as
> members of a collective organization.

Id. (quotations, citations, and alterations omitted).

In subsequent years, courts have been called upon to determine what specific employee protections qualify as minimum labor standards. In Fort Halifax Packing Company v. Coyne, 482 U.S. 1 (1987), the Supreme Court examined whether the NLRA preempted a Maine statute requiring employers to provide a one-time severance payment in the event of a plant closing. Id. at 3-4. The Court held that the statute was not preempted by the NLRA, because "its establishment of a minimum labor standard does not impermissibly intrude upon the collective-bargaining process." Id.

In Contract Services Network, Inc. v. Aubry, 62 F.3d 294 (9th Cir. 1995), the Ninth Circuit similarly ruled that California's worker's compensation laws requiring employers to contribute to unemployment and workers' compensation funds were minimum labor standards not preempted by the NLRA. Id. at 298. The Ninth Circuit ruled, "[T]he California law involved here applies to all private employers without regard to any collective bargaining agreement that may govern other employment matters. The law cannot be undercut by collective bargaining or other means, nor does the law frustrate the purpose of Congress. As a result, we find that the NLRA does not preempt." Id. at 299.

9

In contrast, the Supreme Court in <u>Chamber of Commerce of the United States of America v. Brown</u>, 554 U.S. 60 (2008), concluded that there was <u>Machinists</u> preemption of California statutes prohibiting employers receiving state funds from assisting, promoting, or deterring union organizing. <u>Id.</u> at 62. The laws in issue fell under the Labor Management Relations Act, which amended the NLRA and concerns collective bargaining agreements. The Supreme Court held that the statutes were preempted by the LMRA under <u>Machinists</u> because they regulated within the "zone protected and reserved for market freedom." <u>Id.</u> at 66 (quotations and citation omitted). The regulations were not a "neutral affirmative requirement that funds be spent solely for purposes of the relevant grant or program," but were instead "a targeted negative restriction on employer speech about unionization." <u>Id.</u> at 70-71. The Supreme Court noted that considerable pressure was put on employers receiving the funds to forgo either free speech or state funds. "In so doing, the statute impermissibly predicates benefits on refraining from conduct protected by federal labor laws and chills one side of the robust debate which has been protected under the NLRA." <u>Id.</u> at 73 (quotations and citations omitted).

The statute at issue in this case, section 378-32(b) of Hawaii Revised Statutes, is not a statute that affects union and nonunion employees equally. Instead, it expressly draws a

distinction, targeting employers with collective bargaining agreements. Although the statute draws no express distinction between unionized and nonunionized employees working for the same employer, it clearly applies only to employees working for employers that are parties to collective bargaining agreements. Even if an employer with a collective bargaining agreement has some employees not covered by that agreement, no party in the present case cites any authority suggesting that section 378-32(b)'s effect on some nonunionized employees at a company that also has some unionized employees somehow makes the statute a neutral minimum labor standard equally applicable to all employees. The statute is inapplicable to employees of employers without collective bargaining agreements. By restricting only employers with collective bargaining agreements, the statute impermissibly favors unions and employees over employers.

The effect of the statute is, in some cases, to shift the balance of power with respect to bargained-for sick leave toward employees and unions. Section 378-32(b)(3) states that the statute does not supersede any provision of a collective bargaining agreement more favorable to employee benefits than the statute, but it is silent with respect to provisions more favorable to employers, suggesting different treatment for provisions more favorable to employers. Employers and representatives of employees have an obligation to meet at

reasonable times and to confer in good faith about wages, hours, and other terms and conditions of employment.  29 U.S.C. § 158(d).  Section 378-32(b)(3) tilts such negotiations as to sick leave in employees' favor.

As noted above, the State, at the hearing on the present motions, declined to say whether it read section 378-32(b) as trumping bargained-for collective bargaining provisions allowing employers to take action against employees for dishonesty.  If such provisions are indeed trumped, section 378-32(b) gives employees a 72-hour "free pass" and prevents employers from even questioning employees about whether they were actually sick during that period.  Requiring "free passes" for unionized employees is not the same as implementing a minimum labor standard, as it is not a generally applicable exercise of a state's police powers.  It instead touches on terms bargained for and agreed to in collective bargaining agreements, favoring employees and unions over employers with collective bargaining agreements.

Similarly, if a collective bargaining agreement states that a physician's note will not normally be required unless there is a question of abuse or an absence longer than two days, see, e.g., ECF No. 38-8 at PageID # 486, it appears the effect of the statute is to nullify all or part of that provision, instead permitting the employer to require a physician's note only if the

employee uses "three or more consecutive days of sick leave." The statute would then provide that employer's workers with a benefit not successfully bargained for. The absence of any comparable restriction on employers lacking collective bargaining agreements demonstrates that the State has targeted unionized employers over a term or condition of employment. Such targeting prevents section 378-32(b) from being a neutral, generally applicable minimum labor standard and renders section 378-32(b) preempted under <u>Machinists</u>.

**B.   Equal Protection.**

Having found section 378-32(b) subject to <u>Machinists</u> preemption, the court could end its consideration of the present motions. Instead, the court turns to Plaintiffs' additional challenge to section 378-32(b) on equal protection grounds.[2]

---

[2] This court's conclusion that <u>Machinists</u> preemption applies here is not a conclusion that this court lacks subject matter jurisdiction and therefore may not address that merits of the equal protection challenge. While certain forms of "preemption" do indeed affect subject matter jurisdiction, courts examining <u>Machinists</u> preemption have often done so under Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure, not under Rule 12(b)(1), which is applicable to jurisdictional challenges. <u>See, e.g.</u>, <u>Healthcare Ass'n of New York State, Inc. v. Pataki</u>, 471 F.3d 87, 94 (2d Cir. 2006) (although the district court analyzed a <u>Machinists</u> preemption challenge under Rule 12(b)(6), the Second Circuit noted that the summary judgment rubric was appropriate because affidavits were considered and one of the motions was initially filed as a summary judgment motion); <u>Phoenix Eng'q, Inc. v. MK-Ferguson of Oak Ridge Co.</u>, 966 F.2d 1513, 1526 (6th Cir. 1992) (reviewing Rule 12(b)(6) ruling on <u>Marchinists</u> preemption). <u>Machinists</u> preemption is premised on a congressional policy to leave certain matters unregulated. States are therefore barred under <u>Machinists</u> from regulating such

Plaintiffs assert that section 378-32(b) violates their rights under the Equal Protection Clause, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).

When a law is challenged under the Equal Protection Clause, this court subjects the challenge to one of three levels of scrutiny depending on the classification involved. Strict scrutiny applies to classifications based on race, alienage, or national origin. Such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." City of Cleburne, 473 U.S. at 440. Intermediate scrutiny applies to classifications based on gender or illegitimacy. "A gender classification fails unless it is substantially related to a

---

matters. Machinists preemption, unlike Garmon preemption, does not make the National Labor Relations Board the exclusive arbiter of disputes such that courts must step back from such matters. See Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 226-27 (1993) ("When we say that the NLRA pre-empts state law, we mean that the NLRA prevents a State from regulating within a protected zone, whether it be a zone protected and reserved for market freedom, see Machinists, or for NLRB jurisdiction, see Garmon."). Under Machinists preemption, the National Labor Relations Board does not regulate certain matters at all. Machinists preemption is not tethered to the National Labor Relations Board, instead providing only that state laws are supplanted by the congressional decision to leave unregulated the areas regulated by those state laws.

sufficiently important governmental interest."  Id.
Classifications based on illegitimacy will similarly survive an equal protection challenge to "the extent they are substantially related to a legitimate state interest."  However, when no fundamental right or suspect classification is involved, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Id.; Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990) ("Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest.").  Accord Heller v. Doe by Doe, 509 U.S. 312, 320 (1993) ("Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

    Under the rational basis test, a "classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Heller, 509 U.S. at 320 (quotations and citation omitted).  "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is not subject to

courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Id. (quotations, citation, and alterations omitted). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." Id. (quotations, citation, and alterations omitted). However, in attempting to satisfy the rational basis standard, a state "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne, 473 U.S. at 446; Lockary, 917 F.2d at 1155 (noting that the rational relation test will not sustain malicious, irrational, or plainly arbitrary conduct).

The parties agree that the rational basis test governs here. Section 378-32(b) violates the Equal Protection Clause only if there is no rational relationship between the disparate treatment of different employers and some legitimate governmental purpose. To the extent section 378-32(b) draws a distinction between employers with 100 or more employees and employers with fewer than 100 employees, the State clearly has a rational basis for choosing not to impose the cost of compliance with the statute on small businesses that might sustain negative financial consequences out of proportion to any benefit to employees.

However, to the extent section 378-32(b) distinguishes between employers with collective bargaining agreements and employers without collective bargaining agreements, that distinction is not rationally related to a legitimate governmental purpose. The purposes identified by the State are its interests in protecting employees who use sick leave from retaliation by employers and in protecting the employment relationship. <u>See</u> Motion at 33, ECF No. 32-1, PageID #273. But those reasons provide no justification for treating employers with collective bargaining agreements differently from employers without such agreements.

There is no question that the legislature could rationally protect all employees who use their accrued sick leave from retaliation. But there is no legitimate reason to prohibit retaliation only by employers that have at least one collective bargaining agreement. Although the legislature may have had testimony from union officials indicating that union employees faced retaliation for using sick leave, those employees are less in need of statutory protection than their nonunion counterparts. Union employees have grievance rights, while many nonunion employees do not.

At the hearing on the present motions, counsel for the State posited that the legislature had an interest in preventing employers from breaking collective bargaining agreements. Again,

unionized employees have contractual remedies for employer breaches not necessarily available to nonunionized employees.  In short, the State can justify protecting all employees but has to date articulated no legitimate government interest in protecting only employees working for employers with collective bargaining agreements, or for restricting retaliatory actions only by such employers.  Discerning no legitimate government interest underlying the statute's different treatment of employers, this court does not reach the issue of whether section 378-32(b) is rationally related to a legitimate government interest.

Section 378-32(b) fails the rational basis test and therefore violates Plaintiffs' equal protection rights.

### C.   Remedy.

Plaintiffs seek an order permanently enjoining the State from applying section 378-32(b).  The State contends that, if this court invalidates any part of the law, the court should strike only that portion of the law.  Striking the provision limiting the applicability of the law to employers with collective bargaining agreements would make section 378-32(b) generally applicable to all employers regardless of union affiliation.  The court is reluctant to take the action urged by the State.  To do so would create obligations on employers that the legislature did not actually impose.  Having not been

presented with full briefing on this remedy issue, the court now directs the parties to file briefs addressing the remedy issue.

The court sets a hearing on the remedy issue for April 15, 2013, at 9:45 a.m.  Each side may file a single brief of no more than 3,000 words on the remedy issue no later than March 25, 2012.  Each side may respond to the other's brief with no more than 1,500 words no later than April 1, 2013.

**V.     CONCLUSION.**

The court denies the State's summary judgment motion and grants Plaintiffs' counter motion to the extent it seeks invalidation of section 378-32(b).  The court directs the parties to brief the remedy issue, as set forth above.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 31, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawaii Pacific Health, et al. v. Takamine; Civil No. 11-00706 SOM/KSC; ORDER PARTIALLY GRANTING PLAINTIFFS' COUNTER MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT